smis

FILED

JAN 2 1 2014

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

*POSTED ON WEBSITE*
*NOT FOR PUBLICATION*

**UNITED STATES BANKRUPTCY COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| In re | Case No. 09-22188-E-13 |
| RICK SILLMAN, | |
| Debtor. | |
| RICK SILLMAN, | Adv. Pro. No. 12-2023 |
| Plaintiff, | |
| v. | |
| JOHN WALKER, et al., | |
| Defendants. | |

**This memorandum decision is not approved for publication and may not be cited except when relevant under the doctrine of law of the case or the rules of claim preclusion or issue preclusion.**

**MEMORANDUM OPINION AND DECISION**

This Adversary Proceeding was commenced and has been prosecuted by Rick Sillman ("Plaintiff-Debtor"), in *pro se*. The two Defendants, John Walker ("Walker") and Lisa Talcott ("Talcott"), collectively referred to as "Defendants," also prosecuted this matter in *pro se* until the eve of trial, at which time they engaged counsel. The First Amended Complaint ("FAC") has been winnowed through two motions to dismiss to the claim for

1  violation of the automatic stay.[1]

2      Jurisdiction for this Adversary Proceeding[2] exists pursuant to
3  28 U.S.C. §§ 1334 and 157(a), and the referral of bankruptcy cases
4  and all related matters to the bankruptcy judges in this District.
5  E.D. Cal. Gen Order 182, 223.  This Adversary Proceeding is a core
6  matter arising under Title 11 (specifically including 11 U.S.C.
7  § 362) as provided by  28 U.S.C. § 157(b)(2).  For this core
8  matter, all orders and final judgment are to be entered by the
9  bankruptcy judge.

10      **OVERVIEW OF EVENTS LEADING TO THE ADVERSARY PROCEEDING**

11      The events leading up to the Plaintiff-Debtor's bankruptcy
12  case are good examples of Murphy's Law in legal proceedings – "what
13  can go wrong, will go wrong."[3]  The Plaintiff-Debtor commenced a
14  Chapter 13 case on February 9, 2009.  Bankr. E.D. Cal. No. 09-22188
15  ("09-22188").  Plaintiff-Debtor was represented by counsel in the
16  Chapter 13 bankruptcy case.  On March 9, 2009, Walker, acting in
17  *pro se*,  filed a motion for relief from the automatic stay.  The
18  motion consisted of the following words,

19

20      [1]  The Original and First Amended Complaint included a number of
21  non-bankruptcy law claims being asserted by the Plaintiff-Defendant.
    Original and First Amended Complaint, Dckts. 1 and 32.  The court
22  granted in part Defendants' motion to dismiss.  Dckt. 61.

23      [2]  This Adversary Proceeding was commenced asserting various
    claims and rights for which an Adversary Proceeding is required.  Fed.
24  R. Bankr. P. 7001.  Though reduced to claims for violation of the
    automatic stay, the determination of this issue effects the title to
25  real property.  The parties elected to prosecute these claims through
    an adversary proceeding, which the court concurred was appropriate
26  under the totality of the circumstances and claims asserted.

27      [3]  "Murphy's Law" is commonly attributed to Captain Edward A.
    Murphy, an engineer working on Air Force Project MXP81 at Edwards Air
28  Force Base in 1949.  See www.murphyslaws.com and Merriam-Webster
    Dictionary, www.merriam-webster.com (January 17, 2014).

To Whom It May Concern:

I am requesting relief from the Automatic Stay generated by this bankruptcy.

[John Walker signature] 3-3-09

09-22188, Dckt. 12.

Walker asserted a secured claim in the Chapter 13 case ("Secured Claim") for which the collateral was real property commonly known as 5 Powtan Trail, Oroville, California ("5 Powtan Property"). No notice of hearing, points and authorities, evidence, Relief From Stay Information Sheet, other supporting pleadings, or certificate of service was filed by Walker. Walker also failed to pay the filing fee for such a motion. The Clerk of the Court issued an order to show cause as to why the court should not dismiss the motion based on Walker having failed to pay the required motion filing fee.[4] The hearing on the order to show cause was set for March 31, 2009.

The order to show cause was set for hearing on the court's regular Chapter 13 case dismissal calendar. At the March 31, 2009 hearing, the court determined that Walker's motion for relief from the automatic stay should be dismissed. Unfortunately, the court mistakenly issued an order which purported to dismiss the Plaintiff-Debtor's bankruptcy case, not Walker's motion for relief from the automatic stay. The order purporting to dismiss the Plaintiff-Debtor's Chapter 13 case was filed on April 3, 2009.[5]

The March 31, 2009 hearing, and what transpired during the

---

[4]    *Id.*, Dckt. 14.

[5]    *Id.*, Dckt. 18.

3

hearing, has been the subject of dispute between the Plaintiff-Debtor and Defendants.   The Plaintiff-Debtor asserts that Walker appeared at the March 31, 2009 hearing, misrepresented to the court that he (Walker) was the Plaintiff-Debtor, and misrepresented that the Plaintiff-Debtor did not oppose dismissing the Chapter 13 case. Walker testifies that he did not attend the March 31, 2009 hearing on the order to show cause for the dismissal of his motion for relief from the stay.   The Plaintiff-Debtor and his Chapter 13 bankruptcy attorney both testified that they did not attend the March 31, 2009 hearing because it was merely an order to show cause for the dismissal of the Walker motion for relief from the automatic stay.

Compounding the difficulties in this Adversary Proceeding, the court reporter for the March 31, 2009 hearing, and her notes, cannot be located and there is no transcript of the hearing presented to the court.   No Civil Minutes were prepared by the court or filed in the Chapter 13 bankruptcy case.   The hearing notes for the judge who conducted the March 31, 2009 hearing do not provide any information as to who was in attendance at that hearing.   The attorney for the Chapter 13 Trustee who was in attendance for the March 31, 2009 hearing testified at trial that he has no recollection or record of who was in attendance at the March 31, 2009 order to show cause hearing.

On April 15, 2009, twelve days after the court filed the order dismissing the Chapter 13 case, the Plaintiff-Debtor filed a motion to vacate the order dismissing the case.[6]   On April 15, 2009, the

---

[6]   *Id.*, Dckt. 22.

4

court issued and filed its order vacating the order dismissing the Chapter 13 case.[7]

With the order purporting to have dismissed the Plaintiff-Debtor's Chapter 13 bankruptcy case in hand, Walker conducted a non-judicial foreclosure of 5 Powtan Property owned by Plaintiff-Debtor which was property of the bankruptcy estate.   The non-judicial foreclosure sale was conducted on April 8, 2009, and the trustee's deed from the foreclosure sale was recorded on April 16, 2009.   The proposed Chapter 13 Plan provided for the payment of the Walker Claim as a Class 1 Claim.[8]  At the time of the non-judicial foreclosure sale, the plan payments were being made to Walker.

The uncontradicted testimony at trial was that bankruptcy counsel for the Plaintiff-Debtor contacted Walker and the parties agreed to execute a stipulation rescinding the non-judicial foreclosure sale.   The Plaintiff-Debtor continued to make his Chapter 13 Plan payments and the Chapter 13 Trustee continued to pay Walker his monthly plan payment of $380.00 for the secured claim in the bankruptcy case.[9]  These payments continued through approximately December 2009. The Chapter 13 Trustee's final report states that Walker was paid $3,861.00 on his secured claim in the Plaintiff-Debtor's Chapter 13 case before it was dismissed in 2010.[10]

Unfortunately, from April 2009 when the parties knew the

---

[7]  *Id.*, Dckt. 23.

[8]  *Id.*, Dckt. 10.

[9]  *Id.*

[10]  *Id.*, Dckt. 36.

5

purported dismissal was in error until the case was dismissed on July 30, 2010, no stipulation was finalized, executed, and filed with the court. No deed of reconveyance correcting the California real property records to correct them for the void trustee's deed was recorded by Walker. The testimony at trial was that counsel for the Plaintiff-Debtor was to prepare the stipulation. No testimony was provided concerning any action taken by Walker to address the erroneous order dismissing the case or having conducted a non-judicial foreclosure sale on an order which Walker knew was issued in error.

On June 26, 2010, the Chapter 13 Trustee filed a motion to dismiss the Plaintiff-Debtor's Chapter 13 case.[11] The grounds were that the Plaintiff-Debtor was delinquent $4,668.00 in plan payments through June 2010. With monthly plan payments of $573.00 required, the Plaintiff-Debtor was eight months in default (November 2009 - June 2010). Further, the Plaintiff-Debtor had not filed a motion to confirm his Chapter 13 Plan. The court dismissed the Chapter 13 case by order filed on July 30, 2010, pursuant to the noticed motion of the Chapter 13 Trustee.[12] The Chapter 13 bankruptcy case was closed on October 25, 2010.[13]

No further action was taken by any persons in the Chapter 13 bankruptcy case until October 27, 2011, when the Plaintiff-Debtor filed a motion to reopen the bankruptcy case. Earlier in 2011, Walker pursued a state court unlawful detainer action against the

---

[11]  *Id.*, Motion Dckt. 28.

[12]  *Id.*, Dckt. 33.

[13]  *Id.*, Dckt. 39.

Plaintiff-Debtor to obtain possession of the 5 Powtan Property based on the trustee's deed he obtained from the April 8, 2009 non-judicial foreclosure sale.  The Plaintiff-Debtor did not assert any rights in the bankruptcy court concerning the alleged April 9, 2009 non-judicial foreclosure sale, but pursued a state court action against the Defendants.[14]    The Plaintiff-Debtor's state court complaint was ultimately dismissed, though evidence was not presented whether the dismissal constituted an adjudication of the various state law claims being asserted in that action.   Walker ultimately prevailed in his unlawful detainer action and obtained possession of the 5 Powtan Property.  In reliance on the trustee's deed from the April 9, 2009 non-judicial foreclosure, Walker demolished the structure on the 5 Powtan Property and is alleged to have execute lot-line adjustments between the 5 Powtan Property and other properties owned by Defendants.

In October 2011, apparently after the state court battles were turning unfavorable for the Plaintiff-Debtor, his bankruptcy counsel filed a motion to reopen the Chapter 13 case.[15]  The motion sought to reopen the case to allow the Plaintiff-Debtor to adjudicate whether the non-judicial foreclosure sale was void as a

---

[14]  California Superior Court, Butte County, action no. 150224 against Walker on May 10, 2010.  As set forth in various pleadings filed in the Adversary Proceeding, prior hearings, and referenced at trial, the Plaintiff-Debtor asserts that Defendants have engaged in a list of "legal horribles" which are not related to the Chapter 13 bankruptcy case.  These include concealing defects in the 5 Powtan Property when Walker sold it to the Plaintiff-Debtor, engaging in illegal and improper property transactions, and hiding assets.  These appear to have been the subject of the state court litigation and are not claims being adjudicated in this Adversary Proceeding.  A copy of the State Court Complaint has been presented as Exhibit Q by Defendants.

[15]  09-22188, Dckt. 40.

matter of bankruptcy law.  The court reopened the Chapter 13 case, with the order filed on November 28, 2011.[16]  The Plaintiff-Debtor filed a second motion requesting a declaration that the April 9, 2009 non-judicial foreclosure sale was void and of the Plaintiff-Debtor's interest in the 5 Powtan Property.  That motion was denied without prejudice.[17]  The Plaintiff-Debtor then filed the present Adversary Proceeding.

The undisputed facts in this Adversary Proceeding are set forth in Attachment A to the Pre-Trial Order issued by the court.[18] The testimony provided by the witnesses was generally consistent with the agreed undisputed facts.

## THE ORDER DISMISSING THE CHAPTER 13 BANKRUPTCY CASE WAS VOID AND OF NO LEGAL FORCE AND EFFECT

There is no dispute between the parties that the court's April 3, 2009 order dismissing the Chapter 13 case was issued in error.  No contention has been made that there was any motion or order to show cause for the dismissal of the Chapter 13 case.  The parties recognized this error immediately after the foreclosure sale occurred and agreed to execute a stipulation rescinding the foreclosure sale.  Plaintiff-Debtor continued to make his Chapter 13 Plan payments and Walker continued to receive monthly payments from the Chapter 13 Trustee for his claim secured by the 5 Powtan Property.  However, the parties never documented the stipulation, no order was entered rescinding the non-judicial

---

[16]  *Id.*, Dckt. 49.

[17]  *Id.*, Order and Civil Minutes, Dckts. 60, 58.

[18]  Dckt. 115.

8

foreclosure sale, and Walker did not take any action concerning the non-judicial foreclosure sale which occurred based on the order issued in error dismissing the Chapter 13 case. During this period after the non-judicial foreclosure sale when the parties recognized that the dismissal was in error and they agreed to execute a stipulation to rescind the sale, all parties were represented by counsel. The Plaintiff-Debtor by his Chapter 13 bankruptcy counsel and Walker by two attorneys, both of which testified that they were not "bankruptcy attorneys."

The April 3, 2009 order purporting to dismiss the Chapter 13 case was issued by the court without notice or providing the Plaintiff-Debtor the opportunity to address a dismissal of the case. As addressed by the United States Supreme Court in *Mullane v. Cental Hanover Bank & Trust, Co.*, 339 U.S. 306, 314 (1950), a basic requirement for an order or judgment to be accorded finality is that interested parties be apprised of the pending proceedings and an opportunity to present their objections before a judgment or order is issued. This opportunity to be heard is a fundamental requirement of due process under the United States Constitution.[19]

Recently, the Supreme Court addressed in *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 270-271 (2010) the issue of whether an order was void when issued in error or merely one in which the error must be appealed, stating,

> A void judgment is a legal nullity. See Black's Law Dictionary 1822 (3d ed. 1933); see also id., at 1709 (9th ed. 2009). Although the term "void" describes a result, rather than the conditions that render a judgment unenforceable, it suffices to say that a void judgment is one so affected by a fundamental infirmity that the

---

[19]   *Id.*

9

infirmity may be raised even after the judgment becomes final. See Restatement (Second) of Judgments 22 (1980); see generally id., § 12. The list of such infirmities is exceedingly short; otherwise, Rule 60(b)(4)'s exception to finality would swallow the rule.

A judgment is not "void," for example, "simply because it is or may have been erroneous." *Hoult v. Hoult*, 57 F.3d 1, 6 (CA1 1995); 12 J. Moore et al., Moore's Federal Practice § 60.44[1][a], pp. 60-150 to 60-151 (3d ed. 2007) (hereinafter Moore's). Similarly, a motion under Rule 60(b)(4) is not a substitute for a timely appeal. *Kocher v. Dow Chemical Co.*, 132 F.3d 1225, 1229 (CA8 1997); see Moore's § 60.44[1][a], at 60-150. Instead, Rule 60(b)(4) applies only in the rare instance where a judgment is premised either on a certain type of jurisdictional error or on a violation of due process that deprives a party of notice or the opportunity to be heard. See *United States v. Boch Oldsmobile, Inc.*, 909 F.2d 657, 661 (CA1 1990); Moore's § 60.44[1][a]; 11 C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2862, p. 331 (2d ed. 1995 and Supp. 2009); *cf. Chicot County Drainage Dist. v. Baxter State Bank*, 308 U.S. 371, 376, 60 S. Ct. 317, 84 L. Ed. 329 (1940); *Stoll v. Gottlieb*, 305 U.S. 165, 171-172, 59 S. Ct. 134, 83 L. Ed. 104 (1938). The error *United* alleges falls in neither category.

As previously stated in *United States v. Boch Oldsmobile, Inc.*, 909 F.2d 657, 661 (1st Cir. 1990),

A void judgment is from its inception a legal nullity. With this principle in mind, we must consider appellants' argument that the judgment entered was void, and that relief is proper regardless of the time elapsed, because relief from a void judgment has no time limitations. *United States v. Berenguer*, 821 F.2d at 22; *Lubben v. Selective Service System Local Board No. 27*, 453 F.2d 645, 649 (1st Cir. 1972).)

In *Winer v. Krueger (In re Krueger)*, 88 B.R. 238 (B.A.P. 9th Cir. 1988), the Bankruptcy Appellate Panel for the Ninth Circuit addressed this distinction between a void order purporting to dismiss a bankruptcy case and a valid order dismissing the bankruptcy case which was later vacated under Federal Rule of Civil Procedure 60(b) or reversed on appeal. The Panel was presented with a situation where the bankruptcy court dismissed the debtor's

10

bankruptcy case at a hearing for which no notice was provided to the debtor. When the order dismissing the case was entered, a creditor proceeded with a non-judicial foreclosure sale. Learning of the dismissal, the debtor sought and obtained from the court (after the non-judicial had occurred) an order vacating the order dismissing the bankruptcy case. The Bankruptcy Appellate Panel first concluded that the order dismissing the case, having been issued from a hearing at which the debtor was not provided notice that the case could be dismissed, was void. The Appellate Panel concluded,

> Moreover, notice is not only a statutory requirement, but a constitutional requirement as well. See *Blumer*, 66 B.R. at 113. The due process clause of the Fifth Amendment requires that due process be provided before property can be taken. Id. See also *In re Gregory*, 705 F.2d 1118, 1122-23 (9th Cir. 1983) (acknowledging that notice of a Chapter 13 confirmation hearing must meet due process standards). "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S. Ct. 652, 657, 94 L. Ed. 865 (1950). Here, because the Debtors were not informed that their confirmation hearing had been rescheduled, they clearly were not afforded due process.

> An order is void if it is issued by a court in a manner inconsistent with the due process clause of the Fifth Amendment. See, e.g., *Blumer*, 66 B.R. at 113; *In re Whitney-Forbes, Inc.*, 770 F.2d 692 (7th Cir. 1985) (citing 11 C. Wright and A. Miller, Federal Practice and Procedure, section 2862, page 200, (1973)). Accordingly, in this case Judge Elliott properly vacated the dismissal order that had been issued in violation of the Debtor's due process rights.[20]

The order dismissing the case being void, the bankruptcy case had not been dismissed and the automatic stay continued in full force

---

[20]   *Id.* at 241.

and effect.

> We disagree with this analysis [the trial court
> conclusion that the non-judicial foreclosure sale could
> not violate the automatic stay because vacating the order
> could not make the automatic stay retroactively
> effective]. In our view, because the order dismissing the
> case was void, the stay was continuously in effect from
> the date the petition was filed. Therefore, the
> foreclosure sale was held in violation of the stay. Acts
> taken in violation of the automatic stay are generally
> deemed void and without effect. *Kalb v. Feuerstein*, 308
> U.S. 433, 443, 60 S. Ct. 343, 348, 84 L. Ed. 370, 376
> (1940); *In re Sambo's Restaurants, Inc.*, 754 F.2d 811,
> 816 (9th Cir. 1985); *In re Albany Partners Ltd.*, 749 F.2d
> 670, 675 (11th Cir. 1984). Accordingly, the foreclosure
> sale should have been set aside on this basis.

*Id.* at 241-242.

The Ninth Circuit Court of Appeals discussed the effect of the automatic stay when a bankruptcy case has been dismissed without notice in *Turtle Rock Meadows Homeowners Association v. Slyman (In re Slyman)*, 234 F.3d 1081 (9th Cir. 2000). The Appellate Court considered a situation where the bankruptcy case was dismissed based on a debtor's failure to appear at hearings. The bankruptcy court subsequently vacated the order dismissing the case because that debtor was not provided notice of the hearings at issue. The bankruptcy court order vacating the dismissal in *Slyman* also expressly stated that the automatic stay was retroactively given full force and effect through the date of the dismissal order. The Ninth Circuit concluded in *Slyman* that because the order dismissing the bankruptcy case was void, the acts taken by the creditor (requiring payment of monies to prevent a foreclosure sale) violated the automatic stay and were void.[21] As most recently re-confirmed by the United States Supreme Court in *Espinosa*, *supra*, a

---

[21]    *Id.* at 1087.

void order is a legal nullity.  Such a nullity cannot terminate the rights of the Plaintiff-Debtor, nor can it terminate the automatic stay.

## Acts Taken in Violation of the Automatic Stay Are Void, Not Voidable

That an act taken in violation of the automatic stay is void, not merely voidable, is well-established law in the Ninth Circuit.[22]

> In fact, the automatic stay provision is so central to the functioning of the bankruptcy system that this circuit regards judgments obtained in violation of the provision as void rather than merely voidable on the motion of the debtor. See [*In re Schwartz*, 954 F.2d 569, 571 (9th Cir. 1992)].  Courts regularly void state court default judgments against debtors when the judgments are obtained in violation of the automatic stay provision, even where the debtor filed for bankruptcy in the midst of the state court proceedings. See, e.g., *In re Fillion*, 181 F.3d 859, 861 (7th Cir. 1999); *In re Graves*, 33 F.3d 242, 247 (3d Cir. 1994).

As earlier stated, the Ninth Circuit addressed the significance of the automatic stay to bankruptcy proceedings.  *Schwartz v. United States of America (In re Schwartz)*, 954 F.2d 569, 571 (9th Cir. 1992), (Emphasis in original),

> Our decision today clarifies this area of the law by making clear that violations of the automatic stay are void, not voidable. See *In re Williams,* 124 Bankr. 311, 316-18 (Bankr. C.D. Cal. 1991) (recognizing that the Ninth Circuit adheres to the rule that violations of the automatic stay are void and criticizing the BAP decision in this case). . .
>
>> The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his [or her] creditors. *It stops all collection efforts, all harassment, and all foreclosure actions.* It permits the debtor to attempt a repayment or reorganization plan, or

---

[22]  *Far Out Productions, Inc. v. Oskar et al.*, 247 F.3d 986, 995 (9th Cir. 2001).

> simply to be relieved of the financial pressures that drove him into bankruptcy.
>
> H.R. Rep. No. 595, 95th Cong., 1st Sess. 340 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6296-97 (emphasis added).

Creditors who wish to take action against a debtor or property which is subject to the automatic stay "[h]ave the burden of obtaining relief from the automatic stay."[23]

The Ninth Circuit revisited this issue in *40235 Washington Street Corporation v. Lusardi (In re Lusardi)*, 329 F.3d 1076 (9th Cir. 2003), addressing a county tax sale of real property which occurred after a bankruptcy case was filed, with neither the county nor the purchaser having any knowledge of the bankruptcy case. The Ninth Circuit concluded that because the tax sale occurred while the bankruptcy case was pending, the sale was void, and that the debtor, not the purchaser, was the owner of the real property. This ruling finding that the sale was void was issued more than 12 years after the sale had occurred and notwithstanding the county not having refunded the purchase money paid by the buyer at the tax sale.

**Walker's Non-Judicial Foreclosure Sale and the Trustee's Deed Issued Pursuant Thereto Are Void**

The Plaintiff-Debtor was not afforded the minimum notice he is guaranteed under the Due Process Clause of the United States Constitution. This rendered the April 3, 2009 order dismissing the bankruptcy case void, and therefore of no force and effect in terminating the rights of the Plaintiff-Debtor in the bankruptcy

---

[23]    *Id.* at 572.

1 | case, including the automatic stay. Walker, then acting on the
2 | void order of dismissal, conducted the April 9, 2009 non-judicial
3 | foreclosure sale. While not acting malevolently or intending to
4 | violate the rights of Plaintiff-Debtor, the non-judicial
5 | foreclosure sale was in violation of the automatic stay and
6 | therefore void. This void non-judicial foreclosure sale did not
7 | transfer any interests or rights of the Plaintiff-Debtor in the
8 | 5 Powtan Property.

9 | The Plaintiff-Debtor and his counsel acted promptly and
10 | obtained an order vacating the order dismissing the case on
11 | April 15, 2009. The Plaintiff-Debtor and his counsel again acted
12 | promptly in contacting Walker and Walker's counsel, with the
13 | parties agreeing to execute a stipulation rescinding the non-
14 | judicial foreclosure sale. The parties' agreement to stipulate to
15 | a rescission of the non-judicial foreclosure sale was not a
16 | necessary precedent to the automatic stay having rendered the non-
17 | judicial foreclosure sale void.

18 | While Murphy's Law may have had a significant hand in putting
19 | the parties in the situation of there being a void non-judicial
20 | foreclosure sale and the agreement to rescind the non-judicial
21 | foreclosure sale as of April 2009, the next three years of
22 | litigation and dispute are the outcome of intentional, deliberate
23 | decisions of both the Plaintiff-Debtor and the Defendants. The
24 | Plaintiff-Debtor failed to follow through with a stipulation
25 | rescinding the non-judicial foreclosure sale or seeking relief from
26 | this court until the commencement of the current litigation in
27 | 2011. Instead, the Plaintiff-Debtor took his battle to state
28 | court, fighting the non-bankruptcy law issues relating to his

1  original purchase of the 5 Powtan Property from Walker.

2      Though represented by attorneys and having knowledge that the
3  April 3, 2009 order dismissing the Chapter 13 bankruptcy case was
4  in error and had been vacated, Walker and his "non-bankruptcy
5  attorneys" did not seek knowledgeable bankruptcy counsel to address
6  Walker's rights and obligations.  He intentionally chose to ignore
7  that the order was void and his obligation to correct the violation
8  of the automatic stay.

9      The automatic stay is just that, automatic, with no obligation
10  on a debtor to affirmatively enforce the stay.  When a creditor has
11  notice of a bankruptcy case, it is the creditor's burden to
12  determine the extent of the automatic stay and seek such relief as
13  is appropriate.  COLLIER ON BANKRUPTCY, SIXTEENTH EDITION, ¶ 362.02;
14  *Carter v. Buskirk (In re Carter)*, 691 F.2d 390 (8th Cir. 1982);
15  *Hillis Motors v. Hawaii Automobile Dealers' Association (In re*
16  *Hillis Motors)*, 997 F.2d 581, 586 (9th Cir. 1993) ("Where through
17  an action an individual or entity would exercise control over
18  property of the estate, that party must obtain advance relief from
19  the automatic stay from the bankruptcy court. *Carroll v. Tri-Growth*
20  *Centre City Ltd. (In re Carroll)*, 903 F.2d 1266, 1270-71 (9th Cir.
21  1990).")

22      The Plaintiff-Debtor and Walker present themselves as
23  sympathetic individuals on a personal level, each convinced that
24  the other is out to do him or her wrong.  However, on a legal
25  basis, the Plaintiff-Debtor and Walker have engaged in conduct
26  which has been all but destined to create a multi-jurisdictional,
27  multi-proceeding judicial quagmire.  For the Plaintiff-Debtor, the
28  court can understand how an individual driven to file bankruptcy

16

may need to represent himself in legal proceedings.  However, the Plaintiff-Debtor and his counsel obtained the agreement of Walker to execute a stipulation rescinding the non-judicial foreclosure sale, but then never followed through with the documentation. Instead of proceeding to enforce his bankruptcy rights (upon which the agreed-to stipulation was based), the Plaintiff-Debtor allowed his bankruptcy case to be dismissed and then launched into the State Court litigation asserting various non-bankruptcy law claims.

Walker, having knowledge of the bankruptcy case and that the purported dismissal was in error, mutely sat by and did nothing to document rescinding the void April 9, 2009 non-judicial foreclosure sale which was conducted in violation of the automatic stay and the void trustee's deed.  Walker continued to accept the monthly payments on his secured claim, clearly recognizing that the non-judicial foreclosure sale was invalid and that he was still a creditor of the Plaintiff-Debtor.  Though Walker engaged counsel to advise him in his dealings with the Plaintiff-Debtor and void the trustee's deed, that counsel did not appear for Walker in the Chapter 13 bankruptcy case.  The court does not know what advice was actually given to Walker, but the objective facts show that Walker took no action to address the violation of the automatic stay or determine what the effect of was in conducting a non-judicial foreclosure sale after the issuance of the void order dismissing the Chapter 13 case.  Walker cannot plead "ignorance of the law" and ask this court to allow him to violate the automatic stay because he believes that the Plaintiff-Debtor has acted unreasonably with respect to the various claims and contentions asserted in the State Court Action and the non-bankruptcy issues

which the Plaintiff-Debtor attempted to assert in this Adversary Proceeding.

The burden is on the creditor to act when faced with a violation of the automatic stay. Though Walker has known since April 2009 that the Plaintiff-Debtor has asserted that the non-judicial foreclosure sale violated the automatic stay and was void, he has done nothing to address the issue. Rather, like the ostrich, he has chosen to stick his head in the sand and hope that the Plaintiff-Debtor would not be able to assert his rights in the bankruptcy court. A creditor may seek relief from the stay for prospective conduct, as well under a limited set of circumstances for prior conduct in violation of the automatic stay. See 11 U.S.C. § 362(d), providing for not only terminating, vacating, or modifying the automatic stay, but also annulling the automatic stay. Walker chose not to take any such action, but merely oppose this Adversary Proceeding.

The automatic stay rendered the April 9, 2009 non-judicial foreclosure sale void, and as such the purported trustee's deed to Walker is of no force and effect. The Plaintiff-Debtor was, and is, the owner of the 5 Powtan Property.

## JUDGMENT FOR LISA TALCOTT

Though Lisa Talcott is named as a Defendant, Plaintiff-Debtor did not present the court with evidence to establish a claim for the continuing violation of the automatic stay by Talcott. Though Plaintiff-Debtor may have disputes with Talcott, it is Walker who engaged in the conduct that violated the automatic stay. It is the Plaintiff-Debtor and Walker who have been locked in the violation of automatic stay death spiral which has culminated with this

trial.

With respect to the determination that the non-judicial foreclosure sale was in violation of the automatic stay, and such sale and trustee's deed issued thereon are void, the court grants judgment for Plaintiff-Debtor and against Talcott.    The court grants judgment for Lisa Talcott and against Plaintiff-Debtor on the other remaining claims in the FAC for violation of the automatic stay, and the Plaintiff-Debtor takes nothing from Talcott thereon.

## DAMAGES FOR VIOLATION OF THE AUTOMATIC STAY

The court having determined that the non-judicial foreclosure sale was void and that Walker did and has continued to violate the automatic stay, the court considers the evidence and determines the damages for Plaintiff-Debtor pursuant to 11 U.S.C. § 362(k) and as may be awarded pursuant to the inherent sanction power of this federal court.    As shown by the Plaintiff-Debtor's Supplemental Brief, he is still focusing on issues beyond the scope of the automatic stay.    Damages and claims which relate to the allegations of fraud in originally selling the 5 Powtan Property to Plaintiff-Debtor, the alleged boundary adjustments, trespass, and conversion are not before this court.

The court also considers that Plaintiff-Debtor asserts factually inconsistent position with respect to damages claimed in this Adversary Proceeding.    On the one hand, Plaintiff-Debtor argues that he was defrauded when the house was sold to him.    It has been asserted that Walker failed to disclose that the house on the property was infested with mold and uninhabitable.    Plaintiff-Debtor contends that the house required substantial corrective

work, if it could have been saved at all.

Plaintiff-Debtor than pivots 180 degrees and states he should be awarded damages because Walker, after taking possession of the 5 Powtan Property, demolished the uninhabitable structure and removed the contaminated, mold infested debris from the Property. The court takes judicial notice of the fact that mold remediation work, when the mold renders the house uninhabitable, requires the services of environmental professionals and extensive work beyond merely cosmetic clean up, washing walls, and covering up the mold. Fed. R. Evid. 201.[24]  While in violation of the automatic stay, Walker may well have conferred a significant economic benefit on the Plaintiff-Debtor.

Plaintiff-Debtor further argues that in violating the automatic stay, Walker allowed persons to cut down numerous trees on the property and allowed their agents to bring in a large tractor to alter numerous areas.  Further, Walker allowed off-road vehicles to make numerous trails, all creating erosion and other damage.  However, Plaintiff (1) does not present any evidence of these damages and (2) does not show how this alleged unauthorized

---

[24]  In his Supplemental Trial Brief, Plaintiff-Debtor asserts that Walker is responsible for replacing the entire structure, contending, "[w]hen if the structure had been left on its foundation, Debtor/Plaintiff could have gutted it inside and replaced walls, floors, roof, plumbing, electrical, siding, and stairs, on the same frame that had an approved foundation, for vastly less money than a new structure will now cost."  Dckt. 152, pg. 10:21-25.  First, Plaintiff-Debtor offers no evidence of what completely gutting to the sticks of the frame and then rebuilding the entire house would cost. Second, Plaintiff-Debtor offers no evidence that a house so infested with mold that it had to be taken down to the sticks of the frame would not also have to have the frame removed to remediate the mold infestation.  Finally, this argument admits that there was nothing of value to the house as to walls, floors, roof, plumbing, electrical, siding, and stairs – which constitutes substantially all of the structure.

use of, and alleged damage to, the Property are damages arises from the violation of the stay. Rather, these claims sound in state law for ordinary trespass and conversion. The court makes no determination of any such state law claims, limiting this ruling only to the narrow scope of this Adversary Proceeding – violation of the automatic stay.

Plaintiff-Debtor argues that he previously had been renting one space for a trailer on the 5 Powtan Property for $400.00 a month, including utilities. Further, he argues that if he could have rented the entire property it would be at least $750.00 per month, without utilities. Again, Plaintiff-Debtor does not offer evidence to support these arguments.[25]

Plaintiff-Debtor argues in his Supplemental Brief that he seeks to recover from Walker State Court costs; unlawful detainer costs; and Bankruptcy Adversary Proceeding costs. These include out of pocket expenses and hourly charges for Plaintiff-Debtor's time. Included in the State Court costs are those relating to the action which Plaintiff filed against Walker. No evidence has been presented as to any of these costs. Further, some of these costs clearly have no relationship to the violation of the stay – such as costs incurred by Plaintiff-Debtor suing Walker in State Court. To the extent that Plaintiff-Debtor is entitled to recover costs in this Adversary Proceeding, he may submit a costs bill as permitted

---

[25] As discussed *infra*, it is clear that Plaintiff-Debtor has struggled with these legal proceedings. But that does not grant him an exemption to providing the court with evidence to support his claims. Additionally, while believing that he had valid claims, he has chosen to represent himself rather than engaging counsel. Again, that is his right, but it does not exempt him from having to provide evidence to support his contentions.

1  by the Federal Rule of Civil Procedure and Federal Rule of
2  Bankruptcy Procedure.

3      Though limited evidence of damages was provided, the court has
4  been able to determine what damages relate to the violation of the
5  stay and should properly be awarded Plaintiff.

6  **Damages For The Willful Violation of The Automatic Stay**

7      The Bankruptcy Code provides that an individual who is
8  "[i]njured by a willful violation of the automatic stay shall [not
9  may] recover actual damages, including costs and attorneys' fees,
10 and, in appropriate circumstances, may [not shall] recover punitive
11 damages."[26] A stay violation is willful if a creditor has knowledge
12 of the bankruptcy filing and deliberately acts in such a way that
13 violates the stay.[27]

14      Once the creditor learns or has notice of a bankruptcy case
15 having been filed, any actions that it intentionally undertakes are
16 deemed willful.[28] As the Ninth Circuit Court of Appeals explained:

17     A "willful violation" does not require a specific intent to
       violate the automatic stay. Rather, the statute provides for
18     damages upon a finding that the defendant knew of the
       automatic stay and that the defendant's actions which violated
19     the stay were intentional. Whether the party believes in good
       faith that it had a right to the property is not relevant to
20     whether the act was "willful" or whether compensation must be
       awarded.[29]

21

22     [26]  11 U.S.C. § 362(k)(1).

23     [27]  *In re Preston*, 333 B.R. 346, 348-9 (Bankr. M.D.N.C. 2005).

24     [28]  *In re Risner*, 317 B.R. 830, 835 (Bank. D. Idaho 2004); *see
25  also Eskanos and Adler, P.C. v. Leetien*, 309 F.3d 1210, 1215 (9th Cir.
    2002); *Thompson v. GMAC, LLC*, 566 F.3d 699, 702-3 (7th Cir. 2009);
26  *Emp't. Dev. Dept. v. Taxel (In re Del Mission Ltd.)*, 98 F.3d 1147,
    1151 (9th Cir. 1996) (holding that the knowing retention of estate
27  property violates the automatic stay).

28     [29]  *Goichman v. Bloom (In re Bloom)*, 875 F.2d 224, 227 (9th Cir.
    1989) (citing *INSLAW, Inc. v. United States (In re INSLAW, Inc.)*, 83

The fact that a creditor may have originally acted in good faith and reasonably believed that its conduct did not violate the automatic stay does not insulate the creditor from the court finding the continuing conduct in violation of the automatic stay was willful and subject that creditor to damages.[30]

Bankruptcy Code § 362(a)(3) states that the automatic stay applies to, "any act to obtain *possession of property of the estate* or *of property from the estate* or to exercise control over property of the estate." (Emphasis added). As one of the fundamental principles girding the Bankruptcy Code, "the automatic stay requires a creditor to maintain the status *quo ante* and to remediate acts taken in ignorance of the stay."[31] "The operation of the automatic stay applies to property merely in the debtor's possession at the time of filing, and remains in effect until and unless the debtor abandons such property or relief from the stay is sought."[32] The automatic stay imposes an affirmative duty to discontinue actions in violation of the stay.[33] A creditor cannot use the state court enforcement action as leverage in negotiations once the bankruptcy case has been commenced.[34] When property of the

---

B.R. 89, 165 (Bankr. D.D.C. 1988)).

[30] *In re Cordle*, 187 B.R. 1, 4 (N.D. Cal. 1995).

[31] *Franchise Tax Bd. v. Roberts (In re Roberts)*, 175 B.R. 339, 343 (B.A.P. 9th Cir. 1994).

[32] *Turbowind, Inc. v. Post Street Management, Inc.* 42 B.R. 579, 585 (S.D. Cal. 1984).

[33] *Sternberg v. Johnson*, 595 F.3d 937, 944 (9th Cir. 2010); *Eskanos & Adler, P.C. v. Leetien*, 309 F.3d 1210, 1215 (9th Cir. 2002) (addressing the obligation to discontinue post-petition collection proceedings).

[34] *Eskanos & Alder*, 309 F.3d at 1215.

estate is held in violation of the automatic stay the onus is on
the creditor to turn over the property, not for the debtor, debtor-
in-possession, Chapter 7 trustee, or Chapter 11 trustee to chase
the creditor and force correction of the continuing violation.[35]
"The responsibility is placed on the creditor to address the
continuing violation of the automatic stay because to place the
burden on the debtor to undo the violation 'would subject the
debtor to the financial pressures the automatic stay was designed
to temporally abate.'"[36]

The court finds unpersuasive Walker's arguments that he
innocently, unknowingly, and ignorantly violated the automatic
stay. Walker, with full knowledge that the order dismissing the
case had been vacated and the error committed by the court, with
the assistance of his attorneys, continued to press rights under
the void trustee's deed to take and retain possession of the
5 Powtan Property. Further, the court rejects Walker's contentions
that the concept of an order being void for lack of notice and
violation of due process is such a new and novel concept developed
by this judge that the conduct of Walker and his attorneys acting
in violation of the stay is excusable.

The evidence presented shows that within a week after the
court issued the order dismissing the bankruptcy case in error it
was vacated. Further, that Walker was represented by two attorneys
in his dealings with Plaintiff-Debtor during the bankruptcy case,
including the order dismissing being vacated, in the litigation

---

[35]    *Taxel*, 98 F.3d at 1151.

[36]    *Johnson v. Parker* (*In re Johnson*), 321 B.R. 262, 283 (D. Ariz.
2005) (citation omitted).

24

commenced by Plaintiff-Debtor in state court, and in the unlawful detainer action against Plaintiff-Debtor.  Further, Walker and his attorneys negotiated a stipulation to "rescind" the sale and for Walker to receive payments on his secured claim from Plaintiff-Debtor.

Though represented by two attorneys, Walker argues that (1) he relied on Plaintiff-Debtor's counsel to draft the stipulation, (2) Plaintiff's counsel failed to prepare the stipulation, and (3) any violation of the stay is the fault of the Plaintiff-Debtor for not providing the stipulation.  This is wrong on many levels, and manifests at best a willingness to be intentionally ignorant and at worst a scheme to mislead the Plaintiff-Debtor and violate the stay, gambling that Plaintiff-Debtor would be incapable of seeking to enforce his rights in the bankruptcy court.

Walker ignores the well-established law that it is the creditor's responsibility to not violate the automatic stay and then to correct the violations of the automatic stay.  The contention that "it is Plaintiff's counsel's fault" that Walker continued in violation of the automatic stay is without merit.  There is not a creditor defense of "my attorney was wrong, so don't blame me, the creditor, for violating the stay and doing harm to the debtor."  It is not a debtor's "tough-luck" that a creditor had "bad advice" from an attorney who seeks to take the blame for the violation and insulate the creditor from damages for violating the automatic stay.

Further, Walker acknowledged that he had not foreclosed on the 5 Powtan Property and began receiving ongoing payments on his claim in the Chapter 13 case.  If Walker truly believed that he had

25

properly foreclosed on the 5 Powtan Property, then he knew (being represented by two attorneys) that there was no personal obligation left for which he could be paid by the Plaintiff-Debtor in the bankruptcy case.   See, non-judicial foreclosure anti-deficiency provisions of California Code of Civil Procedure § 580b.   In substance, Walker accepted payments on his claim in the bankruptcy case as a creditor when it was to his financial advantage.   Then, when the bankruptcy case was dismissed, Walker transforms himself from creditor with a secured claim to the owner of the 5 Powtan Property, using the void trustee's deed when that status became financially advantageous.

Walker and his attorneys had full knowledge of the bankruptcy case and the error of the court in issuing the void order purporting to dismiss the bankruptcy case.   Walker and his attorneys elected to not address the violation of the automatic stay or correct the void foreclosure sale.   Whether intentionally intending to take advantage of the violation of the stay or benign neglect, Walker failed to act to correct the violation of the stay.

Walker's conduct in obtaining possession of, controlling, and dispossessing Plaintiff-Debtor from the 5 Powtan Property was a willful violation of the automatic stay as that term is used in 11 U.S.C. § 362(k).

## DAMAGES FOR VIOLATION OF AUTOMATIC STAY

Under the Bankruptcy Code, "an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and in

1  appropriate circumstances, may recover punitive damages."[37]   The
2  basic measure of damages is the amount of economic loss the debtor
3  has suffered as the proximate result of the defendant's violation,
4  taking into account the fair market value of the property that was
5  disposed of in violation of the automatic stay.[38]

6  **Computation of Actual Loss of Use Damages**

7       The  record  in  this  Adversary  Proceeding  establishes  that
8  Walker dispossessed the Plaintiff-Debtor from the 5 Powtan Property
9  for a period of four years.   The evidence presented is that the
10  Plaintiff-Debtor purchased the 5 Powtan Property from Walker as the
11  Plaintiff-Debtor's  residence.     While  the  Plaintiff-Debtor  has
12  struggled in presenting evidence to the court, damages of $500.00
13  a month for each of the 48 months that Walker has wrongfully took
14  and held this property is clearly reasonable.  There can be little
15  dispute that even renting property in the Yankee Hill, California,
16  area would be more expensive than $500.00 a month.   The actual
17  damages for the violation of the stay by Walker exercising control
18  and possession of the 5 Powtan Property over the 48 months period
19  total $24,000.00.[39]

---

22   [37]  11 U.S.C. § 362(k)(1).

23   [38]  *In re Kaufman*, 315 B.R. 858, 866 (N.D. Cal. 2004).

24   [39]  Though the time period from the April 2009 dismissal, vacating
25  the void dismissal order, Walker and his attorneys having the
    information that the purported dismissal was void, and Walker
26  commencing receiving payments in the bankruptcy case as a creditor to
    the November 2013 final day of trial is longer than 4 years, the court
27  limits the damages to that period.  To the extent that Walker "blames"
    the Plaintiff-Debtor for allowing Walker to violate the stay, limiting
28  the damages to 48 months apportions some of the responsibility to the
    Plaintiff-Debtor.

**Emotional Distress Damages**

Actual damages for violation of the automatic stay include emotional distress damages.[40]  For a debtor to state a claim for emotional distress damages, the individual must (1) suffer significant harm, (2) clearly establish the significant harm, and (3) demonstrate a causal connection between the significant harm and the violation of the automatic stay.[41]  Medical evidence of emotional distress is not required; the testimony of family members, friends, and co-workers is sufficient to establish an emotional distress claim.[42]  In some cases no corroborating evidence is required.  An example cited in *Dawson* is where the egregious conduct was the creditor pretending to hold a gun to the debtor's head.[43]  Additionally, the court in *Dawson* stated that even when the conduct was not egregious, the court could award emotional distress damages where the circumstances make it obvious that a reasonable person would suffer emotional harm, such as the emotional distress of having to cancel a child's birthday party because the debtor's checking account was frozen.[44]

---

[40]  *Dawson v. Wash. Mut. Bank (In re Dawson)*, 390 F.2d 1139, 1148 (9th Cir. 2004).

[41]  *Id.* at 1149.

[42]  *Id.*, citing *Varela v. Ocasio (In re Ocasio)*, 272 B.R. 815, 821-22 (B.A.P. 1st Cir. 2002) (holding that testimony of debtor's wife was sufficient to support an award of medical damages without medical testimony).

[43]  *Dawson*, 390 F.2d at 1149 (citing *Wagner v. Ivory (In re Wagner)*, 74 B.R. 898, 905 (Bankr. E.D. Pa. 1987)).

[44]  *Dawson*, 390 F.2d at 1149 (citing *United States v. Flynn (In re Flynn)*, 185 B.R. 89, 93 (S.D. Ga. 1995) ($5,000.00 award of emotional distress damages because 'it is clear that the appellee suffered emotional damages' when she was forced to cancel her son's birthday

The conduct of Walker dispossessed and deprived the Plaintiff-Debtor of his residence and the real property he purchased from Walker.  As with precluding a mother from giving a birthday party for her son, kicking a person out of his home and then actively keeping them from returning to their home causes significant emotional distress.  This emotional distress continued for the 48 months following the void non-judicial foreclosure sale.  The court finds that there are $14,000.00 in emotional distress damages.  When spread over the 48 months, that equates to $291.66 a month while being prevented from living in and having possession of the 5 Powtan Property.[45]

**The Conduct of Walker Supports the Award of Punitive Damages**

An individual injured by any willful violation of a stay provided by this section may, in addition to compensatory damages, also be awarded punitive damages.[46]  Although 362(k) permits the

---

party because her checking account was frozen)); *see also Sternberg*, 595 F.3d at 943.

[45]  From the presentation of the parties and pleadings in this case, it is clear to the court that the Plaintiff-Debtor (who so admitted to the court) copes with mental health issues.  His ability to focus on the significant matters on issues before the court appears to be compromised, leading to his being distracted by other issues.  From what was presented, this is exactly the type of person who a less than honorable creditor might believe could be the subject to improper influence and unable to reasonable protect his rights.  Whether Murphy's Law further compounded the problems in this case or Walker and his attorneys devised a strategy intended to "run over" the Plaintiff-Debtor, this court will never know, in large part due to the Plaintiff-Debtor's limitations in presenting evidence to the court.  At best for Walker, he and his attorneys devised an ill-conceived strategy which worked to obfuscate the real issue and divert attention from the violation of the automatic stay.

[46]  11 U.S.C. § 362(k)(1); *see also Drnavich v. Cavalry Portfolio Service, LLC*, No. 05-10222005, U.S. Dist. LEXIS 38686, 2005 WL 2406030 (D. Minn. Sept. 29, 2005).

recovery of such damages "in appropriate circumstances," the Ninth Circuit has cautioned that punitive damages are only appropriate if there has been some showing of reckless or callous disregard for the law or rights of others.[47]    The bankruptcy court has considerable discretion in granting or denying punitive damages under 362(k).[48]   Punitive damages are properly awarded to punish unlawful conduct and deter its repetition.[49]

A debtor entitled to actual damages does not automatically qualify under § 362(k)(1) to recover punitive damages.   The court must decide whether the circumstances of each case warrant punitive damages.[50]  When considering an award for damages, the court should consider the gravity of the offense and set the amount to assure that it will both punish and deter.[51]  A creditor's good faith or lack thereof is relevant to sanctions under § 362(k)(1).[52] The rule in both the Ninth Circuit and California is that punitive damages must be proportional; they must be reasonably related to compensatory damages.[53] However, there is no fixed ratio or formula

---

[47]   *Bloom*, 875 F.2d at 228

[48]   *Id.*

[49]   *See BMW of N. Am. v. Gore*, 517 U.S. 559, 568 (1996); *Cooper Indus. v. Leatherman Tool Group*, 532 U.S. 424, 432 (2001).

[50]   *Henry v. Assocs. Home Equity Servs. (In re Henry)*, 266 B.R. 457, 481-83 (Bankr. C.D. Cal. 2001).

[51]   *Id.*

[52]   *See Walls v. Wells Fargo Bank (In re Wells)*, 262 B.R. 519, 529 (Bankr. E.D. Cal. 2001).

[53]   *Hudson v. Moore Business Forms, Inc.*, 836 F.2d 1156, 1162-63 (9th Cir. 1987).

for determining the proper proportion between the two.[54]    In
determining the appropriate amount of punitive damages, the court
usually considers the following factors: (1) the nature of the
defendants' acts; (2) the amount of compensatory damages awarded;
and (3) the wealth of the defendants.[55]

In determining that the award of punitive damages is proper,
the court first considers the purpose of the automatic stay.  This,
as stated by Congress, is a fundamental protection given the debtor
and creditors.  Experienced counsel know that violating the stay is
not something to be trifled with or taken lightly.  Even when a
violation occurs, the creditor can purge the violation and avoid
serious damages by correcting the violation.

**Nature of Walker's Actions**

Throughout the trial Walker continued his drumbeat that it was
the Plaintiff-Debtor's fault the stay was violated.  That it was
the Plaintiff-Debtor's fault that the documents were not signed to
rescind the void non-judicial foreclosure sale.  That it was the
Plaintiff-Debtor's fault that Walker proceeded (with the assistance
of his own two attorneys) to prosecute an unlawful detainer action
based on the void trustee's deed from the non-judicial foreclosure
sale conducted in violation of the automatic stay.  That it is the
Plaintiff-Debtor's fault that Walker accepted payments as a
creditor in the bankruptcy case after the void foreclosure sale,
and then later Walker claiming he was the owner of the 5 Powtan

---

[54]    *Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001,
1024-25 (9th Cir. 1985).

[55]    *Bauer v. NE Neb. Fed. Credit Union (In re Bauer)* No. EC-09-
1281, 2010 Bankr. LEXIS 5096, (B.A.P. 9th Cir. Apr. 8, 2010).

Property pursuant to the void trustee's deed.  This shows a callous disregard to the automatic stay and the obligations of a creditor in a bankruptcy case.  Walker's conduct since 2009 when the dismissal order was vacated shows his intentional, willful (with the assistance of two attorneys), and continuing acts in violation of the automatic stay.

It is well established that an "ignorance of the law" defense, even when arising from a strategy of counsel which is contended to insulate a client from responsibility, is not a *bona fide* defense.[56] Walker willfully, intentionally, and with the assistance of counsel violated the automatic stay in dispossessing Plaintiff-Debtor from possession of the 5 Powtan Property and retaining possession thereof through trial in this Adversary Proceeding.  Walker did nothing to correct what may have started as an unintentional violation of the automatic stay, but instead willfully and intentionally compounded the violation.  From observing the parties at trial, their conduct in the proceedings prior to trial, and the pleadings filed, the court concludes that Walker did so hoping or believing that the Plaintiff-Debtor, due to medical and emotional limitations, would be unable to assert rights under the Bankruptcy Code.

Walker's refrain of "it's not my fault, the Plaintiff-Debtor should have made me comply with the law" is the chorus sung by a creditor who intentionally violates the stay and gets caught.  For the court to not award some punitive damages, a green light would

---

[56] *Botell v. United* States, No. 2:11-cv-01545-GEB-GGH, 2012 U.S. Dist. LEXIS 41172 (E.D. Cal. March 26, 2012); *Joe Hand Promotions, Inc. v. Estradda*, No. 1:10-cv-02165-OWW-SKO, 2011 U.S. Dist. LEXIS 61010 (E.D. Cal. June 8, 2011).

be given to creditors to risk violating the automatic stay if the dollar amounts at issue are large enough and they have a debtor who is legally, emotionally, or physically impaired.   The court does not give such a green light, with punitive damages being necessary to deter this type of conduct in the future.

**Appropriate Amount of Punitive Damages**

The second factor considers the proportionality of the punitive damages to the compensatory damages awarded to the Plaintiff-Debtor.   In this Adversary Proceeding, the court has awarded damages totaling $24,000.00 for the lost use and possession of the 5 Powtan Property, and $14,000.00 for emotional distress damages.   In a 2004 decision, *State Farm Mutual Auto Insurance Company v. Campbell*, 538 U.S. 408 (2004), the Supreme Court discussed the Constitutional reasonableness requirement in determining the amount of punitive damages.   While not setting a maximum ratio between punitive damages and compensatory damages, the court notes that punitive damage awards which are single digit multiple of the compensatory damages are more likely to withstand constitutional scrutiny.[57]   The Court in *State Farm* cited to its earlier holding in *BMW of North America v. Gore*[58] that a punitive damage award (which in *Gore* was 500 times the compensatory damages) in excess of four times the compensatory damages might be close to the line of constitutional impropriety.

While Walker's conduct is egregious, the court has dealt with significant actual and emotional distress damages which Walker has

---

[57]   *Cooper Industries v. Leatherman Tool Group*, 532 U.S. at 425.

[58]   517 U.S. at 582.

33

to pay.  Further, punitive damages in the amount of $7,500.00 are
proper.  This amount is significant enough for Walker, and other
similarly situated creditors, that they know they cannot violate
the automatic stay with impunity.  However, this punitive damage
award is only 20% of the actual damages, less than a 1-times
multiple.  It is also only 14.7% of the $51,000.00 secured claim
being asserted (the remaining obligation from the sale of the
5 Powtan Property to the Plaintiff-Debtor).

**Financial Condition of Walker**

The last factor considers the wealth of Walker.  Little
evidence was provided by either party to assist the court in this
portion of the ruling.  What the court does know is that Walker
sold the 5 Powtan Property and had a secured claim in the
Plaintiff-Debtor's bankruptcy case in the amount of $51,000.00.
09-22188, Proof of Claim No. 2.  Walker received the monthly
payments on this secured claim in the Plaintiff-Debtor's Chapter 13
case.  *Id.*, Chapter 13 Plan, $380.00 a month for approximately
nine months, for a total of $3,861.00.

The court also knows, from the evidence presented and
pleadings filed by Walker, that Walker lives in Montana and owns
property in California. Walker has extensively litigated, with the
assistance of attorneys, his contention that the void trustee's
deed transferred title to the 5 Powtan Property to Walker.  He is
not a simpleton, the mere "least sophisticated consumer" who does
not engage in investment real estate transactions and legal
proceedings.  A $7,500.00 award of punitive damages is only 14.7%
of the remaining obligation ($51,000.00 secured claim) from the
real estate transaction that is at the heart of this Adversary

Proceeding. In light of the financial information available, this clearly is not an unreasonable amount.

The court awards the Plaintiff-Debtor $7,500.00 in punitive damages against Walker.

**No Offset**

Prior to the enactment of 11 U.S.C. § 362(h), a violation of the automatic stay was, and may still be, addressed pursuant to the contempt power of the court. *Knupfer v. Lindblade (In re Dyer)*, 322 F.3d 1178, 1189-1190 (9th Cir. 2003). The provisions of § 362(h) codify the right to damages and attorneys' fees for an individual debtor. In either situation, the award of damages is necessary for the enforcement of the statutory injunction created by Congress in 11 U.S.C. § 362.

Awards of damages for violating the automatic stay would be of little consequence, and deterrent effect, to a creditor if they could be offset against the large debt already owed by a debtor. Allowing such an offset would give creditors a "free shot" at violating the automatic stay, allowing them to offset the damages and sanctions against the existing obligation (which most likely is not being paid in full).

There, the court also orders that the actual and punitive damages awarded in this Adversary Proceeding may not be offset against any obligation of the Plaintiff-Debtor which predates the issuance of the judgment in this Adversary Proceeding. This does not prohibit the Plaintiff-Debtor voluntarily agreeing to offset his obligation to Walker against the amounts owed by Walker under the judgment in this Adversary Proceeding.

///

**CONCLUSION**

Judgment is granted for Rick Sillman, the Plaintiff-Debtor, and against John Walker and Lisa Talcott, the Defendants, and each of them, determining that the April 2009 non-judicial foreclosure sale and the April 2009 Trustee's Deed issued pursuant thereto are void for being in violation of the automatic stay in the Rick Sillman Chapter 13 case, Bankr. E.D. Cal. No. 09-22188. Further, that no interest was transferred pursuant to the April 2009 Trustee's Deed; John Walker and Lisa Talcott, and each of them, acquired no interest in the 5 Powtan Property pursuant to said Trustee's Deed; and that title to the 5 Powtan Property remained in Rick Sillman notwithstanding the issuance and recording of the April 2009 Trustee's Deed.

Judgment is granted Rick Sillman, the Plaintiff-Debtor, and against John Walker in the amount of $45,500.00, consisting of an actual damages award of $24,000.00 for the dispossession of and loss of use of the 5 Powtan Property, an actual damages award of $14,000.00 for the emotional distress, and $7,500.00 in punitive damages.

Judgment is granted Lisa Talcott, a defendant, and against Rick Sillman on all remaining claims for alleged violations of the automatic stay in the First Amended Complaint.

The court shall issue a separate judgment consistent with the Ruling.

Dated: January 21 , 2014

RONALD H. SARGIS, Judge
United States Bankruptcy Court

36

# Instructions to Clerk of Court
## Service List - Not Part of Order/Judgment

The Clerk of Court is instructed to send the Order/Judgment or other court generated document transmitted herewith to the parties below.  The Clerk of Court will send the Order via the BNC or, if checked _____, via the U.S. mail.

       Debtor(s), Attorney for the Debtor(s), Bankruptcy Trustee (if appointed in the case), and __XX____ Other Persons Specified Below:

Office of the U.S. Trustee
Robert T. Matsui United States Courthouse
501 I Street, Room 7-500
Sacramento, CA 95814

Peter G. Macaluso
7311 Greenhaven Dr., #100
Sacramento, CA 95831